EL PASO & SOUTHWESTERN RAILROAD COMPANY *v.* EICHEL & WEIKEL.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE FOURTH SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 252.   Argued December 3, 1912.—Decided January 13, 1913.

This court cannot review a judgment of the State court under § 709, Rev. Stat., on the ground of denial of a Federal right, privilege or immunity unless the same was specially set up or claimed in the state court.

Questions of the *lex loci contractus* and of the *lex loci solutionis* are questions of general law that frequently arise in litigation and do not, unless specially so claimed, constitute the setting up of a Federal right or privilege.

In this case the insistence of plaintiff in error that his rights under a contract were to be determined according to the law of a different State, did not amount to claiming that full faith and credit was

denied to the law of another State so as to give a basis for a review
of the judgment by this court under § 709, Rev. Stat.

Where, as in this case, it appears that the state court based its decision
upon the interpretation of the contract and not upon the law of
another State, there is no basis for review by this court on the ground
of failure to give full faith and credit to the acts of another State.

The assertion of a Federal right in an unsuccessful application to the
highest court of a State to grant a writ of error to a lower court of
that State raises no question reviewable in this court.

Writ of error to review 130 S. W. Rep. 922, dismissed.

THE facts, which involve the jurisdiction of this court
to review a judgment of a state court on writ of error under
§ 709, Rev. Stat., are stated in the opinion.

*Mr. A. B. Browne,* with whom *Mr. Alexander Britton,*
*Mr. Evans Browne* and *Mr. W. C. Keegin* were on the
brief, for plaintiff in error.

*Mr. Philip W. Frey,* with whom *Mr. Waters Davis,*
*Mr. J. M. Coggin* and *Mr. Richard F. Burges* were on the
brief, for defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

Writ of error sued out under § 709, Rev. Stat., to review
a judgment of the Court of Civil Appeals, that being the
highest court of the State in which a decision in the suit
could be had, because the Supreme Court of Texas denied
a petition for writ of error to review the judgment in that
court.

The action was brought by defendants in error in the
District Court of El Paso County, Texas, to recover dam-
ages for certain alleged breaches of contract committed
by the railroad company, now plaintiff in error. Damages
were recovered accordingly, and the judgment awarding
them was affirmed by the Court of Civil Appeals. 130
S. W. Rep. 922. Whether the jurisdiction of this court is

properly invoked depends upon whether any Federal right or immunity was duly set up. or claimed by the plaintiff in error in the state court, and there overruled.

The controversy in suit arose out of a written contract between the parties whereby the railroad company, owner of a railroad located in the then Territory of New Mexico, for the purpose of procuring crushed stone ballast from a quarry owned by it and situate in the Territory, agreed to provide a crushing and quarry plant capable of producing 1000 cubic yards of ballast in ten hours, with the necessary appurtenances and equipment, including coal, water, and railroad cars, and the defendants in error agreed that with and from said plant they would quarry, crush, prepare and deliver ballast at the rate of 750 cubic yards for each day's work, at prices fixed by the contract. The contract contained a clause providing that monthly payments to the extent of 90 per centum of the engineer's estimates should be made to the defendants in error during the progress of the work, with a final payment at the completion of the whole work contemplated, "upon the certificate of the Company's Engineer of Maintenance of Way that the Contractor has acceptably discharged all of his obligations under this agreement in conformity to the following specifications." Also the following, appended to the specifications: "The decision of the Company's Engineer of Maintenance of Way shall be final and conclusive in any dispute which may arise between the parties to this agreement relative to or touching the same; and each of the parties hereto waives any right of action, suit or suits, or other remedy in law or otherwise, by virtue of the covenants herein, so that the decision of said Engineer of Maintenance of Way shall, in the nature of an award, be final and conclusive on the rights and claims of said parties."

The plaintiffs, in their petition, set up numerous grounds of action. So far as they were submitted to the jury they

were summarized by the trial judge as follows: Plaintiffs alleged that the defendant failed to furnish a crusher plant of the capacity agreed to be furnished, that the plant actually furnished was of much less capacity, and that instead of furnishing coal and water of a quality reasonably sufficient and suitable for the purpose of operating the plant and quarry, the defendant furnished coal and water entirely unsuitable for that purpose; that by reason of the incapacity of the plant and the unsuitability of the coal and water, plaintiffs were prevented from producing the quantity of ballast required by the contract, and which they had a right to produce and would have produced but for the defendant's alleged defaults; that the cost of the ballast actually produced was greatly enhanced by reason of said defaults, and plaintiffs were finally compelled to shut down, and abandon their contract; wherefore they sought to recover the retained ten per cent., certain penalties that had been exacted under the terms of the contract for failure to produce ballast, and certain freight charges against them deducted by defendant for goods transported over its own line; and also to recover for the enhanced cost of production of the ballast actually produced and for the profits which they alleged they would have made under the contract if it had been fairly performed by the defendant.

The defense, so far as now pertinent, was, that the contract was made and intended to be performed in the then Territory of New Mexico and was made with reference to the laws in force therein, and that there was in that Territory, at the time of the making of the contract and at the time of the suit, "a certain non-statutory and unwritten law, to the effect that agreements such as those herein specially referred to (meaning the agreement respecting the arbitrament of the engineer), are valid and binding, and that neither of the parties to such contract and agreement has any right of action in a cause based

thereon, but must rely for a decision of such rights and claims on the determination thereof by such engineer."

This defense was set up by exceptions to the plaintiffs' petition, and by special pleas thereto. The cause proceeded to trial, whereupon the defendant introduced, for the purpose of showing the laws of New Mexico at the time the contract was made, certain decisions of this court, to wit: *Kihlberg* v. *United States,* 97 U. S. 398; *Sweeney* v. *United States,* 109 U. S. 618; *Martinsburg & Potomac R. Co.* v. *March,* 114 U. S. 549; *Chicago, Santa Fe &c. R. Co.* v. *Price,* 138 U. S. 185; *United States* v. *Robeson,* 9 Pet. 319, 327; *United States* v. *Gleason,* 175 U. S. 588; *Mercantile Trust Co.* v. *Hensey,* 205 U. S. 298. At the conclusion of the evidence the defendant, among other special charges, requested the court to instruct the jury that the contract sued on provided that the decision of the company's Engineer of Maintenance of Way should be final and conclusive in any dispute between the parties relative to the agreement, and that each of the parties thereby waived any right of action or other remedy at law, or otherwise, by virtue of the covenants of the agreement, and expressly agreed that the decision of the engineer should, in the nature of an award, be final and conclusive on the rights of the parties; that the contract was intended to be performed in the Territory of New Mexico, and that under the laws of that Territory the agreement referred to was a valid agreement, binding upon both parties; that under the laws of the Territory and the provisions of the contract made in pursuance thereof, the matters and things in dispute in this action should have been submitted to the decision of the engineer, and because they had not been so submitted and acted upon by him, no judgment could be rendered against the defendant arising out of the matters in dispute; and also, that if the jury believed from the evidence that the engineer had theretofore decided and determined that the plant

in question was of the capacity warranted, and the coal and water were serviceable for the purpose for which they were intended, and that all allowances which plaintiffs could be entitled to by reason of delay on account of the lack of coal and water, or the bad character of coal and water, had been in fact allowed by the engineer, and the plaintiffs had been paid therefor by the defendant, then the plaintiffs would not be entitled to recover in this action by reason of the incapacity of the plant or the character and quality of the coal and water furnished, unless the jury should further believe that in making such decisions and awards the engineer acted in fraud of the plaintiffs' rights, or in such ignorance thereof as to amount in law to a fraud.

The trial court refused to give these instructions, and on the contrary charged the jury that if the crusher plant installed by the defendant company did not have the stipulated maximum capacity, or if the water or coal was of a quality not reasonably suitable for the operation of the plant, and if by reason of either of these causes the production of ballast by the plaintiffs was reduced beneath 750 cubic yards per day, and beneath that which the plaintiffs would otherwise have actually produced with reasonable care, management, and diligence, and if plaintiffs suffered loss and damage by reason thereof, then the defendant would be liable for such loss and damage as was the proximate result of its failure to furnish a crusher plant of the guaranteed capacity, or to furnish reasonably suitable coal or reasonably suitable water.

In the opinion of the Court of Civil Appeals, the action of the trial court was sustained upon the following reasoning: "The question of the capacity of the crushing plant, the quality and sufficiency of the coal and water to successfully operate the plant to the end it was furnished plaintiffs by defendant, were not by the contract submitted to the engineer for his decision. These matters,

as we have seen, were conditions precedent to the contract
which it was incumbent upon the defendant to perform
in order that plaintiffs might carry out their part of the
contract, and if defendant failed to perform them, and
such failure proximately caused default of plaintiffs for
which the penalties were assessed by the engineer, such
assessments were wrong, and the amount paid by plain-
tiffs, if not voluntarily, are recoverable by them." And
again: "It was not contemplated by the contract that
defendant's engineer as an arbiter should determine the
question whether a material provision in the contract was
breached by either party and assess the damages occa-
sioned by such breach; nor were such matters submitted
to or determined by such engineer. If they had been,
neither party would have been bound by his award; for
they were such as could only be determined by a court of
competent jurisdiction. Therefore, there was no error in
the court's refusing special charges Nos. 43 and 45 (being
those to which reference has been made), nor do we think
that either of said special charges suggested any law upon
the subject to which they pertain, which required the
court to prepare another charge thereon and submit it to
the jury."

We have sufficiently indicated the general character
of the controversy, the issues of fact and of law that were
raised therein, and the disposition that was made of them.
Whether this court has jurisdiction to review the resulting
judgment depends, of course, upon whether in the course
of the proceedings the plaintiff in error "specially set up
or claimed" any "right, privilege, or immunity" under
the Constitution or any statute of the United States,
within the meaning of § 709, Rev. Stat.

It is contended that the decisions of this court that were
introduced as evidence of the law of New Mexico in effect
conferred upon the plaintiff in error the privilege and im-
munity of being protected against any action to recover

damages, except such as the engineer had decided were due to defendants in error; and that the failure of the state court to give effect to those decisions or to properly construe and apply the unwritten law of the Territory as established thereby, presents a Federal question as much as if an act of Congress had been disregarded.

But assuming (without, however, conceding) that the plaintiff in error was entitled to a "right, privilege, or immunity" in the premises, derived from the Federal Constitution or laws, the question remains whether such right, privilege, or immunity was "specially set up or claimed." An examination of the record discloses that while it was repeatedly insisted that the rights of the parties under the contract should be determined according to the law of the Territory of New Mexico, that such law was to be ascertained from the reported decisions of this court, and that under those decisions the clauses that gave finality to the decision of the company's engineer were valid and binding, and that the plaintiff's action was foreclosed thereby, it was not suggested that in so insisting the plaintiff in error was asserting or relying upon any right, privilege, or immunity derived from the Constitution or laws of the United States.

Questions of the *lex loci contractus* and of the *lex loci solutionis* are questions of general law that frequently arise in actions respecting written agreements. *Von Hoffman* v. *Quincy,* 4 Wall. 535, 550; 9 Cyc., Title "Contracts," 664–674; 2 Pars. Cont. *567, *582–*585; Story, Confl. Laws, §§ 231, 232, 241, 242, 270, 272, 280, etc. To insist, in such a litigation, that the matter ought to be controlled by the law of the place where the contract was made and to be performed, rather than by the law of the forum, is no more than to insist that the controversy shall be determined according to the rules of law properly applicable thereto.

The points raised by plaintiff in error that are now re-

lied upon as an assertion of Federal rights were brought
to the attention of the trial court and of the Court of
Civil Appeals like any other of the multitude of questions
that were raised in those courts; and, so far as appears,
the decision in both courts proceeded not in disregard of
any Federal right asserted or suggested, nor even in dis-
regard of the decisions of this court or the authority of
those decisions as laying down the law of the Territory of
New Mexico, but rather upon the ground that, upon the
proper interpretation of the contract, the clause that was
cited as giving finality to the decision of the company's
engineer was not applicable to the questions in con-
troversy.

We therefore deem it clear that plaintiff in error did
not lay the foundation for a review under § 709, Rev.
Stat., either in the trial court or in the Court of Civil
Appeals.

After the denial by the latter court of a motion for re-
hearing, application was made to the Supreme Court of
Texas for a writ of error, to the end that that court might
review the judgment. In this application alleged Federal
rights were for the first time asserted, it being assigned
for error that the trial court and the Court of Civil Ap-
peals had "refused to give full faith and credit to the
public acts and laws of the Territory of New Mexico,"
etc., etc. The application was considered and refused,
and a motion for a rehearing thereon was overruled. But
since the Court of Civil Appeals is the highest court of
the State that rendered a judgment reviewable here
(*Stanley* v. *Schwalby*, 162 U. S. 255, 269; *Bacon* v. *Texas*,
163 U. S. 207, 215) the assertion of Federal rights in an
unsuccessful application to the Supreme Court of the
State for a writ of error raises no question that is review-
able in this court.

*Writ of error dismissed.*