PEOPLE OF THE STATE OF NEW YORK EX REL. ROSEVALE REALTY COMPANY *v.* KLEINERT, SUPERINTENDENT, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 350.　Argued April 29, 1925.—Decided June 8, 1925.

Under a law authorizing an administrative board to regulate the height, spacing, etc., of buildings thereafter erected in a city, and

for such purposes to divide the city into districts, and to change the districts from-time to time after notice and hearing, a lot on which plaintiff had planned to build was transferred to a district of greater restrictions incompatible with the plan, and permission was denied for that reason. *Held,*

(1) That a judgment refusing relief by mandamus was not reviewable by this Court upon the question whether the substantial provisions of the regulations deprived the plaintiff of his property in violation of the Fourteenth Amendment, the federal question raised in the state court having been limited to the constitutionality of the transfer from the district of lesser to that of greater restrictions. P. 650.

(2) That the latter question was not open here, not having been raised by assignments of error, nor specified in the brief as required by Rule 21, par. 2, cl. (2). P. 651.

Writ of Error to 237 N. Y. 580; 206 App. Div. 712, 207 *Id.* 828, dismissed.

ERROR to a judgment of the Supreme Court of New York entered on affirmance and remittitur by the Court of Appeals, denying a petition for a writ of mandamus.

*Mr. Benjamin Reass,* with whom *Messrs. Emanuel Newman* and *Hugo Hirsh* were on the brief, for plaintiff in error.

*Mr. Joseph P. Reilly,* with whom *Messrs. Charles J. Druhan* and *George P. Nicholson* were on the brief, for defendant in error Kleinert.

*Mr. James Marshall,* with whom *Mr. J. George Silberstein* was on the brief, for defendants in error, Midwood Manor Association and Kalvin.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The Rosevale Realty Co., the relator herein, filed its petition in the Supreme Court of New York for a peremptory mandamus directing Kleinert, as Superintendent of the Bureau of Buildings, to approve its plans

for an apartment house and grant it a permit to erect
the same.    On final hearing the Supreme Court entered
an order denying this petition.    This was affirmed by the
Appellate Division and by the Court of Appeals, 206 App.
Div. 712 and 207 App. Div. 828; 237 N. Y. 580.    The
record was remitted to the Supreme Court, to which this
writ of error was directed.    *Hodges* v. *Snyder*, 261 U. S.
600, 601.

By an Act amending the charter of Greater New York
the Board of Estimate and Apportionment was given power
to regulate the height and bulk of buildings thereafter
erected, the area of courts and other open spaces, and the
location of buildings designed for specific uses; to divide
the city into districts for such purposes; and to change
such districts from time to time, after public notice and
hearing.    New York Laws, 1916, c. 497, p. 1320.    In July,
1916, the Board adopted a " Building Zone Resolution ",
or ordinance, dividing the city into various classes of Use,
Height, and Area districts.[1]    In the several classes of area
districts, which were designated A, B, C, etc., the required
open spaces on each lot were progressively increased and
the available building space correspondingly decreased.
This Resolution also provided that the Board might from
time to time change the districts, either on its own motion
or on petition.

In the Spring of 1922 the relator acquired a plot of
ground in the Borough of Brooklyn, then in a C area dis-
trict.    It was also in a residential section known as Mid-
wood Manor, in which, under private restrictive covenants
contained in the deeds, no buildings except detached
dwelling houses could be erected before January 1, 1923.
Disregarding these restrictive covenants, the relator pro-
cured plans for a 40-family apartment house, conforming
as to open spaces, etc., to the requirements of a C area

[1] Each parcel of ground was placed within one of each of these
three classes of districts.

district. It filed these plans with the Superintendent of the Bureau of Buildings on September 1, 1922, for the purpose of having them approved and obtaining a building permit.[2] The Superintendent on the same day issued a temporary permit for the necessary installation of footings and foundations; but on the next day revoked this temporary permit, because of a petition that had been forwarded by other owners of property in Midwood Manor to the Board of Estimate and Apportionment, to place this locality within an E area district. On October 20, 1922, the Board, after a public hearing, amended the Zoning Resolution of 1916 by changing this locality, including the relator's plot, from a C to an E area district. On the following day the Superintendent refused approval of the relator's plans because the proposed building was contrary to the regulations of the Zoning Resolution applicable to an E area district.

On January 25, 1923, the relator filed the present petition for peremptory mandamus against the Superintendent.[3] In this petition the relator did not challenge in any way the constitutionality of the substantive provisions of the Zoning Resolution, either in reference to E area districts or otherwise, but did allege, in general terms, that the amendment of October 20, 1922, deprived it of its property in violation of the due process and equal protection clauses of the Fourteenth Amendment. In other

---

[2] By the Building Code of the city the Superintendent was required to approve or reject any application or plan " within a reasonable time "; and, if approved, to promptly issue a permit therefor.

[3] Meanwhile, in a suit by an owner of other property in Midwood Manor, the relator had been enjoined from constructing the apartment house, in violation of the restrictive covenants, prior to Jan. 1, 1923. And an earlier petition filed by the relator for a peremptory mandamus against the Superintendent had been denied because of the pendency of this injunction, but without prejudice to an application to be made after its vacation or termination. 204 App. Div. 883; 236 N. Y. 605.

words, it merely challenged the constitutionality of the transfer of its property from a C to an E area district, but did not challenge the constitutionality of the provisions in reference to E area districts in and of themselves.

The petition was denied by the Supreme Court on the ground that the building for which the relator desired a permit would, if constructed, be in violation of the Zoning Resolution as amended, and would be unlawful. There was no reference in the opinion to any constitutional question; and the order of the Supreme Court was affirmed by the Appellate Division and the Court of Appeals, without opinions.

1. The relator by its assignments of error challenges the constitutionality of the substantive provisions of the Zoning Resolution, especially as to the restrictions in an E area district made applicable to its plot by the amendment of October, 1922, and earnestly contends, in an elaborate argument, that such restrictions are not regulatory, but confiscatory, and have no such relation to the public welfare, as justifies the exercise of the police power of the State. This broadly outlined, is the contention made both in the oral argument and the relator's brief.

It is clear, however, that no question as to alleged unconstitutionality of the substantive provisions of the Zoning Resolution or of the particular provisions relating to E area districts, was presented by the petition for mandamus; and no such question appears to have been presented to any of the State courts, or to have been considered or determined by them. It is well settled that this Court is without jurisdiction to review the judgment of a State court on a writ of error, by reason of a federal question which was not raised below or called to the attention of or decided by the State court. *Cincinnati, etc., Ry.* v. *Slade,* 216 U. S. 78, 83; *El. Paso and Southwestern R. R.* v. *Eichil,* 226 U. S. 590, 597. The writ of error in the present case, therefore, does not bring up for our de-

termination the question as to the constitutionality of the substantive provisions of the Zoning Resolution as to which it is now sought to invoke our decision.

2. While there is an incidental statement in the relator's brief that the amendment of the Zoning Resolution has resulted in restricting the principal use to which relator's property may be put, and also in the illegal confiscation of the plans prepared to conform to a C area district, no argument is made as to this question. And we find that the assignments of error do not, in any tangible or specific way, present any question as to the constitutionality of such amendment, but, that, reasonably construed, they relate merely to the constitutionality of the substantive provisions of the Zoning Resolution made applicable to the relator's property by the amendment. In short, the assignments challenge the constitutionality of the restrictive provisions themselves, and not the transfer from one area district to another. Nor is there in the relator's brief any specification of the errors relied upon, as required by Rule 21 of this Court, par. 2, cl. (2), setting up separately and particularly any error asserted in reference to the constitutionality of the amendment itself. This question is therefore not properly before us, even if its presentation was in fact intended.

As the only federal question properly presented by the assignments of error, namely, the constitutionality of the substantive provisions of the Zoning Resolution, is one which, for the reasons already stated, is not brought within our jurisdiction by the writ of error, we conclude that, without consideration of the merits, the writ must be dismissed, and it is so ordered.

*Writ of error dismissed.*