Demetrius D. SIMS, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–137.

District of Columbia Court of Appeals.

Submitted May 15, 2008.

Decided Dec. 31, 2008.

Ian A. Williams, Washington, was on the brief for appellant.

James Klein and Alice Wang, Public Defender Service, filed a brief amicus curiae on behalf of appellant.

Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, Florence Pan, Perham Gorji, and John P. Gidez, Assistant United States Attorneys, were on the brief for appellee.

Before KRAMER, Associate Judge, FARRELL, Associate Judge, Retired,* and KING, Senior Judge.

FARRELL, Associate Judge, Retired:

A jury found appellant guilty of carrying a pistol without a license (CPWL), possession of an unregistered firearm (UF), and unlawful possession of ammunition (UA).[1] According to evidence the jury credited, a police officer saw appellant throw a pistol into the rear yard of a dwelling from an alley behind 53rd Street, N.E. He did not live at that address. Appellant makes several arguments for reversal but none persuades us, and we affirm.

■ Relying on *District of Columbia v. Heller*, —— U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), appellant first contends that the Second Amendment bars his prosecution for the weapons offenses. Joined by the Public Defender Service as *amicus curiae*, he argues that the CPWL, UF, and UA statutes are constitutionally invalid on their face in light of *Heller*. This claim, however, was not preserved. Appellant does not assert, and our review of the record reveals no indication, that he raised it in the trial court. "Where [a Second Amendment] challenge has not been raised in the trial court, we consistently have declined to consider it for the first time on appeal." *Hartridge v. United States*, 896 A.2d 198, 224 (D.C.2006). Even considering the challenge here in light of *Heller*, we must do so under the rubric of plain error review. *See Washington v. United States*, 884 A.2d 1080, 1099 (D.C.2005).

---

* Judge Farrell was an Associate Judge of the court at the time of submission. His status changed to Associate Judge, Retired, on July 1, 2008.

1. The jury acquitted him of assault with a dangerous weapon and possession of a firearm during a crime of violence.

Resisting this conclusion, appellant and *amicus* argue that, in light of *Heller*, his prosecution suffered from "a jurisdictional infirmity that cannot be waived or forfeited" (Br. for *Amicus* at 25). That argument has been rejected by (among other courts) the District of Columbia Circuit in *United States v. Drew*, 339 U.S.App. D.C. 413, 418, 200 F.3d 871, 876 (2000), where the court held that a Second Amendment challenge to the federal felon-in-possession statute, 18 U.S.C. § 922(g), was not jurisdictional and was therefore waived by the defendant's guilty plea. *Id.* (citing *United States v. Baucum*, 317 U.S.App. D.C. 63, 80 F.3d 539 (1996) (constitutional claim is not jurisdictional and may be forfeited by failure to raise claim in trial court)). The *Baucum* court in particular rejected reliance on appellant's two primary authorities, *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (both double jeopardy cases), explaining that the fact that some double jeopardy claims may be voluntarily waived shows that neither *Blackledge* nor *Menna* is founded on subject-matter jurisdiction principles. *Baucum*, 317 U.S.App. D.C. at 66–67, 80 F.3d at 542–43 (citing *Ricketts v. Adamson*, 483 U.S. 1, 9–10, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987)). Moreover, the court said, "even if 'the power to hale a defendant into court' does involve a question of jurisdiction, it does not follow that any facial constitutional challenge is also jurisdictional[,]" given that such constitutional challenges may be procedurally defaulted if not timely raised. *Id.* at 67, 80 F.3d at 543. The *Baucum* court also noted the "important prudential considerations" that militate against ruling that facial constitutional challenges are jurisdictional, because such a rule would "place a burden on trial courts to make threshold constitutional determinations without the benefit of briefing and argu-

ment, and invite 'wait and see' tactics throughout the entire duration of the criminal proceedings." *Id.* at 68, 80 F.3d at 544.

■ We agree with this reasoning, and thus reject appellant's "jurisdictional" reliance on *Blackledge* and *Menna*—even assuming those decisions, concerning the interplay of double jeopardy and guilty pleas, have relevance to the setting here. *See also United States v. Frazier*, No. 07–6135, 2008 WL 4949153, at * 5, 2008 U.S.App. LEXIS 24023, at *15–*17 (6th Cir. Nov. 19, 2008) (applying plain error analysis to unpreserved Second Amendment claim). Also, a panel of this court may not ignore the court's own past decisions holding that Second Amendment claims (as well as other constitutional claims) may be (1) waived by a defendant's guilty plea, *see Mitchell v. United States*, 746 A.2d 877, 885 n. 11 (D.C.2000); *Collins v. United States*, 664 A.2d 1241, 1242 (D.C. 1995), or (2) forfeited by failure to raise the claim in the trial court. *See Hartridge*, 896 A.2d at 224 (Second Amendment challenge); *Williams v. United States*, 237 A.2d 539, 540 (D.C.1968) (same); *Gilchrist v. United States*, 954 A.2d 1006, 1012–13 (D.C.2008) (Sixth Amendment claim).

■ We therefore apply to appellant's Second Amendment claim the standards for plain error set forth in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Doing so, we hold that it fails at the threshold: appellant cannot show, under *Heller*, that constitutional error in extending the CPWL, UF, or UA prohibitions to his conduct is "plain," in the sense of " 'clear' or, equivalently, 'obvious,' " *id.* at 734, 113 S.Ct. 1770 even viewing the matter as of the time of appeal. *See Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d

718 (1997).[2] Appellant was found to have carried and possessed a loaded Ruger P89 9mm semi-automatic pistol which he discarded while standing in the rear alley of 53rd Street, N.E. Although he lived nearby at 109 53rd Street, N.E., there was no evidence that when the police saw him toss the pistol to the ground he was even within the boundary lines (or curtilage) of his home, much less inside the home itself. (The gun was recovered moments later from the backyard of another home.) Moreover, no evidence linked his possession of the gun to any arguable motive of self-defense that had impelled him to remove the gun from his home.[3]

In *Heller*, by contrast, the issue presented was the constitutionality of the District's gun prohibitions as applied to "the possession of usable handguns *in the home*." 128 S.Ct. at 2787–88 (2008) (emphasis added). The Court concluded that "the District's ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition [*see* D.C.Code § 7–2507.02] against rendering any lawful firearm *in the home* operable for the pur-

pose of immediate self-defense"; and accordingly, it held that, "[a]ssuming ... Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it *in the home*." *Id.* at 2821–22 (emphases added). Whatever else the Second Amendment might prohibit, the Court reiterated, it bars "the absolute prohibition of handguns held and used for self-defense in the home." *Id.* at 2822.

Important questions about the reach of *Heller* remain to be answered, but what assuredly is not "clear" and "obvious" from the decision is that it dictates an understanding of the Second Amendment which would compel the District to license a resident to carry and possess a handgun outside the confines of his home, however broadly defined. (There is, of course, no record evidence that appellant ever sought a license to carry or attempted to register the semiautomatic pistol.) That is all we need decide in this case to reject, as we do, appellant's unpreserved Second Amendment claim.[4]

2. Nor is it "clear" or "obvious" that appellant may mount the facial challenge to the statutes that he does on the theory that they cannot be constitutionally applied to other, differently situated defendants. *See, e.g., German v. United States*, 525 A.2d 596, 604–05 (D.C. 1987) (in absence of First Amendment concerns, defendants "do[ ] not have standing to assert the rights and interests of third parties who might be unconstitutionally affected by [a] statute"); *see also, e.g., Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ("Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.").

3. Appellant did not take the stand, so the only evidence of his reason for carrying the gun

was provided by a government witness, Gerald Carter, who said that appellant had confronted him on the street with the gun (exclaiming "Who's the bitch now?") after the two men had had "a brief spat" over a debt in appellant's home, where Carter threw money at appellant, saying, "stop sweating me for [the] bitch-ass $12." Thus, even if *Heller* can be read to recognize a broader Second Amendment ban against enforcing gun prohibition laws against a citizen (not otherwise disqualified) who is "acting in self-defense," *Heller*, 128 S.Ct. at 2820, at home or in public—an issue on which we express no opinion—no evidence whatever supported an inference that appellant was carrying the Ruger P89 for self-defense when he was seen throwing it down.

4. Appellant argues that it is unfair to apply plain error analysis to his Second Amendment claim because an objection on that ground would have been futile at the time under

■ Appellant's remaining assignments of error have no merit. The evidence was fully sufficient to support the jury's finding that he carried and possessed the loaded pistol. Officer Watkins testified to having seen him throw down the gun, and any arguable inconsistencies in the testimony on this point were for the jury to resolve. *See Blakeney v. United States,* 653 A.2d 365, 370 n. 4 (D.C.1995). Moreover, as the government points out, others besides Watkins saw appellant carrying a gun.

■ Finally, the 9mm bullet found in appellant's house was properly admitted in evidence, because it linked him to the recovered pistol. It was relevant proof of the crime charged,[5] *see generally Jones v. United States,* 625 A.2d 281, 284 (D.C. 1993) (defining relevance), and the fact that someone else besides appellant may have lived in his house (and possibly placed the bullet there) affects the weight of the evidence, not its admissibility. *See Stewart v. United States,* 881 A.2d 1100, 1111 (D.C.2005).

*Affirmed.*

*Sandidge v. United States,* 520 A.2d 1057, 1058–59 (D.C.1987). We rejected an indistinguishable argument in *Clarke v. United States,* 943 A.2d 555, 556 (D.C.2008), relying on *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Contrary to appellant's suggestion, *Thomas v. United States,* 914 A.2d 1 (D.C.2006), does not require the court to resolve his claims on the merits so that, if it finds error in his prosecution in light of *Heller,* that error would now be "plain." *Thomas* was an exceptional case in which the court exercised its discretion—at the government's urging, *see id.* at 8 n. 7—to decide an unpreserved but recurrent issue before applying the remainder of plain error review. It did not purport to establish a uniform procedure for conducting plain error analysis. A second Amendment claim like appellant's, but preserved at trial, is presented in a number of pending appeals in this court; we leave resolution of it, unencumbered by plain error review, to one or more of those cases.

5. The UA charge itself was based on the ammunition found in the pistol, not the bullet retrieved from the house.